[No. 8773. Department One.—September 29, 1885.]

C. H. SWIFT ET AL., EXECUTORS, ETC., OF FRANK SWIFT, DECEASED, APPELLANTS, v. THE SAN FRANCISCO STOCK AND EXCHANGE BOARD, RESPONDENT.

UNINCORPORATED ASSOCIATION — SAN FRANCISCO STOCK AND EXCHANGE BOARD — CONSTITUTION OF CONSTRUED — DONATION UPON DEATH OF MEMBER — ACTION TO RECOVER. — The defendant is a voluntary unincorporated association. Its constitution provides in effect for the creation of a trust fund, from which, upon the death of a member, a payment of $10,000 is directed to be made to such person or objects as he might have designated in writing, or if no written disposition was made by him, then to certain specified persons. It further provides that the payment should be deemed an absolute donation to the payee, free from all other claim or control. *Held*, that such donation formed no part of the estate of a deceased member, and that his personal representatives could not maintain an action to recover it.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of MR. JUSTICE McKEE.

*Estee & Boalt*, for Appellants.

*Garber, Thornton & Bishop*, for Respondent.

McKEE, J.—The San Francisco Stock and Exchange Board is a voluntary unincorporated association composed of one hundred persons, who under that name have combined for the purpose of facilitating the purchase and sale of stocks by its members. For that purpose the originators of the association organized in the year 1862 by subscribing to a body of rules, regulations, and provisions contained in articles of agreement in writing, which they adopted as the constitution and by-laws of the association.

Article xxii. of the constitution adopted by them contains the following provisions:—

## "TRUST FUND COMMITTEE.

"There shall, at all times, exist in this board a committee composed of at least three members or more, at the discretion of the board, to be known as the Trust Fund Committee.

It shall be the duty of such committee to take charge of all moneys which may come into their hands, by direction and vote of the board, and invest the same according to their best discretion and judgment; said moneys, and the increase of the same under such investments, to constitute a trust fund, to be used and applied by such committee in the following manner, viz.:—

"Upon the death of a member of the board said Trust Fund Committee shall pay from the increase in their hands, from investment of said moneys, to such person or persons, object or objects, as may have been designated in writing by such deceased member, the sum of $10,000 in United States gold coin. In case there be no such written disposition made, then to the widow of such deceased member, the sum of $10,000 in United States gold coin. In case there shall be no widow, and a child or children surviving such member, then to such child or children, equally share and share alike. If there shall be neither widow, child, or children surviving such deceased member entitled to receive said money, nor any disposition made of the same, as hereinbefore provided, then there shall be no payment or provision made under this article. The payments herein provided for shall be deemed absolute donations to the persons, or for the object to which the same are made or applied, free from all claim or control from any other source or persons.

"In case the increase of said moneys shall not have accumulated to a sum sufficient to meet the donations herein provided for as the same shall be needed, the deficit shall be made good at once by assessments *pro rata* upon the members of the board, and collected in like manner and under the same penalties as other dues."

Of the board Frank Swift was a member from the 21st of August, 1875, until the 6th of January, 1877. As such he had fully complied with all the requirements of the constitution and by-laws, so that, in the event of his death, his surviving wife and children, or any person or object that he might designate, according to the provisions of article xxii., would be entitled to receive the donation provided by said article. And while a member of the board, he died in the city and county of San Francisco, on the 6th of January, 1877, leaving no wife, or child, or children surviving him; but he left a will which was

probated, and the plaintiffs, as the executors nominated by the will, were appointed and qualified as executors thereof.

The will contained the following bequests:—

"*First*— I give and bequeath to my father, Chas. H. Swift, the sum of $12,500; to my mother, Adelia B. Swift, the sum of $12,500; to my sister, Ellen A. Brown, $5,000; to my sister, Maggie M. Mills, $5,000; to my sister, Fannie E. Lohman, $5,000; to my niece, Florence A. Durden, $10,000; to my niece, Millie B. Durden, $5,000; to my niece, Minnie F. Durden, now married to Z. T. Therrel, $5,000. These amounts, aggregating $60,000, I desire paid to said respective legatees within a year after my decease.

"*Second*— Should my estate be worth more than sixty thousand dollars ($60,000), and I now estimate it at $80,000, including my seat in the San Francisco Stock Exchange Board and the insurance on my life by said board, I give and devise to D. L. McDonald of San Francisco, the brother of my late dearly beloved wife, the sum of $5,000.

"*Fifth*— The balance of my estate I desire paid over to my mother, Mrs. C. H. Swift, and by her distributed among the poor in any manner she may see proper."

After the executors had qualified and entered upon the discharge of their duties they made a demand upon the stock and exchange board for payment to them of the "donation," to which they claimed that they as executors were entitled. At the time they made this demand there was sufficient money in the trust fund for payment; but the defendant refused to pay upon the ground that no disposition of the "donation" had been made as required by its constitution and by-laws. And seasonably after the demand and refusal, the executors commenced the action in hand to recover against the defendant a money judgment for said sum of $10,000.

The action is founded upon the existence of a contractual relation between the San Francisco Stock and Exchange Board and its members for the payment of $10,000 in case of the death of a member, for which it is claimed his executor or administrator may maintain an action upon section 388 of the Code of Civil Procedure. Section 388 reads thus:–

" When two or more persons associated in any business, transact such business under a common name, whether it comprise the names of such persons or not, the association may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates in the same manner as if all had been named defendants, and had been sued upon their joint liability."

The personal representative of a decedent may maintain any action founded upon contract which could be maintained by the decedent if he were alive. (§ 1582, Code Civ. Proc.) But Frank Swift if alive could not maintain an action against the association of which he was a member for the recovery of the sum of $10,000 sought to be recovered in this action, unless the members of the association were associated in a business transacted by them in the name of the association in which they contracted to pay.

The complaint affirms and the answer denies that the members were associated in business, " and transacted and carried on the business of buying and selling mining and other stocks at the city and county of San Francisco under the common name of the San Francisco Stock and Exchange Board." Upon the issue thus joined the court finds:—

" That the defendant is not, and was not at any of the times mentioned in the complaint, an organization of persons or composed of persons who are, or at any of the times mentioned in the complaint have been associated in business, or who transact or carry on the business of buying or selling mining or other stocks, or any other business at the city and county of San Francisco or elsewhere under the common name of 'the San Francisco Stock and Exchange Board,' or under any other name, or at all."

This finding is attacked as unsustained by the evidence; but it is unquestionable that the main objects of the association are, the establishment of a mart for the sale and purchase of stocks and exchange by the members for their *individual* gain or loss, and the creation of a trust fund for the benefit of surviving wife or children, etc., of deceased members; and the evidence shows that in pursuit of those objects, the association rents and fur--

nishes a hall in which the members meet at stated hours of the day, and engage in individual transactions with each other, under and in accordance with the rules and regulations adopted by them for that purpose; and that the rent of the hall, together with the incidental expenses connected therewith, are paid out of fees collected by the association for the listing of stocks and dues and fines collected from its members; but these things are done merely for the convenience of the members, and as incidental to the primary objects of the association. (*Lafond* v. *Deems*, 81 N. Y. 507.)

The collection of these fees, fines, or dues does not constitute a business in which the members participate in the way of profit or loss as partners or otherwise; and when collected they do not constitute property in which the members have a right to any proportional part of it. "The association is, therefore, not a partnership; it does not share in the losses of the individual associates; each member takes his own gains and incidentally sustains the losses incident to his engagement. . . . . There are no profits earned to be divided among its members, nor are there any losses to be borne arising out of the acts of the joint body. ; . . . The association looks to a continued existence unaffected by the death, resignation, suspension, or removal of its members. If it was a copartnership, the retirement or death of one of its members would *ipso facto* dissolve it." (*White* v. *Brownell*, 3 Abb. Pr. N. S. 323.)

"Nor do the members as stockholders hold any interest in the property derived from the collection of fees, dues, or fines. Such property is a mere incident and not the main purpose or object of the association. A member has no severable proprietary interest in it, or a right to any proportional part of it upon his withdrawal, removal, or death." (Dos Pasos on Stock Exchange, p. 15.)

And the bond of association contained in the articles of agreement contains nothing which binds the members in the associate name to pay a sum of money to any member, or to do any act or thing from which a promise to pay a sum of money to any member or members *in personam* would be implied. In other words, there is no promise express or implied by the members, collectively or individually, in the name of the association, out

of which springs a personal obligation in favor of any member, for a breach of which an action would be maintainable against the association by a member in his lifetime, or by his personal representative after his death.

But it is urged that the association transacted the business of life insurance of its members, because section 23 of the constitution, as amended in 1875, required a candidate for the benefit of the trust fund to file with the secretary of the board a medical certificate attesting his fitness, to be accepted by the board, as a participant in the "life insurance fund"; and it is argued from this article, that the members of the association are associated in the business of life insurance and transact such business in the common name of the association.

Reading together sections 22 and 23 of the constitution we find nothing which justifies the conclusion that the association, in connection with the fund in controversy, is engaged in transacting an insurance business. There is no contract of insurance between the members. The constitution merely provides for a beneficiary fund, and for the payment, out of the fund, of a specified sum to the surviving or designated person or persons qualified to receive it upon the death of a member. The term "life insurance" does not apply to such an object. (*Barboro* v. *Occidental Grove*, 4 Mo. App. 429.) So in *Durian* v. *Central Verein etc.*, 7 Daly, 168, it was held that where a beneficial society by its constitution provides for the payment of a specified sum to the wife upon the husband's death, such right is not in the nature of an insurance upon the husband's life, and the society may, by a subsequent change in its constitution or by-laws, make the money payable to some nominee of the husband other than the wife.

And in distinguishing between an association, whose primary object was contracting with its members for the insurance of their lives, and an association organized for a social, literary, or benevolent purpose, to which a feature of mutual insurance is added for the purpose of mutual aid, the Supreme Court of Missouri hold that the latter cannot be said "to be carrying on the business of insurance, and with which we suppose it was not the intention of the legislature to interfere." (*State ex rel etc. Benefit Association*, 6 Mo. App. 172. See also *Lafond* v. *Deems, supra*.)

I therefore think that the acts performed by the association in carrying out the purposes for which it was established, are not done in the transaction of a business carried on in the name of the association for the profit or loss of its members. It rents rooms, employs officers, fixes fees and dues, imposes fines, and collects them; and when the retirement or death of a member renders it necessary to elect a successor by the sale of his place in the board, or to levy an assessment for the purpose of making payment out of the trust fund of the donation provided by the constitution to the surviving members of the family or designated appointee of the deceased member, it sells the one and enforces the collection of the other from the members "in like manner and under the same penalties as other dues." But all these things, although in the nature of business, do not in themselves constitute a business for the transaction of which the members have associated themselves in the name of the association. They are merely incidental to the primary objects of the association.

Yet while no contractual obligations *in personam* bound the members of the association as partners or otherwise, for transacting a business in the common name of the association for their profit or loss, there spring from the articles of agreement obligations incidental to the creation of rights for the benefit of others, and of duties imposed upon the association in connection with the fund provided for such rights, in the event of the death of any one of the members. These are rights which arise out of the executory contract between the association and the members in favor of surviving members of the family of a deceased member, or the persons or objects designated by him, before his decease, according to the provisions of the constitution, as beneficiaries of the trust. If such surviving or designated beneficiaries exist upon the death of a member the rights to the beneficiary fund vest in them, and the corresponding duty is imposed upon the association to pay to them out of the fund the sum agreed to be paid. But the articles of agreement provide that such payments "shall be deemed absolute *donations to the persons,* or for the object to which the same are made or applied, *free from all claim or control from any other source or persons.*"

The beneficiaries are, therefore, the only persons qualified to receive a "donation" out of the fund; it does not belong to the estate of the deceased member and is not chargeable with the payment of his debts.

So, in an action brought to determine the right to a beneficiary fund, payable by an association, upon the death of one of its members, under a constitution which provided, "that on the death of a member in good standing a beneficiary fund shall be paid 'to the person or persons named by the decedent and entered by his order on the will-book,'" the Supreme Court of Michigan held, that the fund payable on the death of a member of the association to persons named by him is not to be treated as part of his estate subject to his debts, and does not go to the administrator, but should be paid directly to the beneficiaries. (*The C. M. Benefit Association* v. *Priest et al.* 46 Mich. 429.) To the same effect will be found *Ballou* v. *Gile, Administrator etc.* 50 Wis. 614; *Vollman's Appeal,* 92 Pa. St. 50; *Masonic Mutual Life Ins. Co.* v. *Miller, Administrator,* 13 Bush, 489; *Arthur* v. *Odd Fellows,* 29 Ohio St. 557.

As, therefore, the beneficiary fund of the association was no part of the estate of one of its deceased members, but belonged to the surviving or designated donees of the fund, it follows the testator had no interest in it upon which a will could operate; and the executors are not entitled to recover it as part of the estate of their testator.

Yet while the testator had no personally enforcible right or interest in the fund itself, he had, under the constitution of the association, a power of appointment—authority to designate the ultimate beneficiary. But that was a power exercisable by him, and if not exercised prior to his death the power and authority died with him. Nobody representing him could exercise it after his death. If, upon his death, there were no survivors and no persons or objects designated to take, he had nothing in the fund which would descend, or upon which his will could operate. "His contract," says the Supreme Court of New York, "effected that result. . . . . The condition of payment to which he agreed was that the money should be paid out of the fund to the person designated by him before his decease." (*Hellenberg* v. *Dist. No.* 1 *of I. O. of B. B.* 94 N. Y. 585, 586.)

It may be conceded that a member of the association, in the exercise of this power of appointment, could designate his administrator or the executors of his will, or any person or objects, as the recipients of his bounty; and the question arises whether the testator, by his will, designated the executors as beneficiaries of the trust fund.   The court finds: —

"Said Frank Swift did not, in or by his last will and testament, or otherwise, or at all, designate any person or persons, or any object or objects, to whom or to which the sum of ten thousand ($10,000) dollars, or any part thereof, mentioned in and provided for by article xxii. of constitution of said association, should be paid.   That . . . . he did not, in or by said last will and testament, or otherwise, designate said sum of ten thousand ($10,000) dollars, or any part thereof, as included in or belonging to the estate of which by said will he was making testamentary disposition."

This finding is also attacked as unsustained by the evidence.

The question of designation must be determined by the will itself, for it is the only evidence in the case of an exercise of the power of appointment.   In the will the testator makes no mention of the trust fund, except, incidentally, in connection with an estimate of the value of his estate.   After making specific bequests to the amount of $60,000, he adds: "Should my estate be worth more than $60,000 (and I now estimate it at $80,000, including my seat in the San Francisco Stock and Exchange Board and the insurance on my life by said board), I give, bequeath, etc. . . . . And the balance of my estate I desire paid over to my mother . . . . and by her distributed among the poor in any manner she may see proper."

It might well be inferred from this language that the testator intended to mix what he supposed to be his interest in the trust fund of the board with his estate, for the purpose of exercising over it, as part of his estate, his disposing power.   But, as we have seen, he had no disposing power over it as part of his estate.   The only power exercisable over it was that defined by the constitution of the board, and that was merely a power of appointment of some person or body to receive it as a thing distinct and separate from his estate.   Undoubtedly the testator might have exercised this power of appointment of a person to

receive the fund and apply it to the purposes of his estate in his will, and he could have designated in that way his executors or any other persons; but the will does not name the executors, or creditors, or legatees, jointly or individually, as persons to receive payment of the "donation" for the purposes of his estate or otherwise. And for aught that appears in the case itself the estate of the testator is sufficient to meet all the special bequests of the will. That being so, the beneficiary fund did not pass either by the special bequests or the residuary clause of the will as part of the estate of the testator, and the will itself did not operate as a valid execution of the power of appointment.

In the case of the *Maryland Mutual Benevolent Society of the Imperial Order of Red Men of the State of Maryland* v. *Clendinen, Administrator with the will annexed of Ferdinand Stansbury*, 44 Md. 429, the testator, at the time of his death, was a member in good standing of an incorporated benevolent society, which by its constitution provided, upon the death of any member, for the payment of a fixed sum "to the widow, child, children, or such person or persons to whom the deceased may have disposed of the same by will or assignment." The testator left neither widow nor children, but by his will he bequeathed as follows: "After the payment of all my just debts and funeral expenses out of my estate, I devise as follows: I give and bequeath the entire residue of my estate to my three sisters," etc. The administrator claimed that the money passed by the will, and that he was entitled to recover it as assets of the estate; but the court held that the fund assigned by the charter to the widow and children of the deceased or his legatee or assignee was not assets recoverable by the administrator; that the *jus disponendi* given by the charter was a mere power; and that the will was not a valid exercise of the power, the intention to exercise it not being expressed, and it not appearing that there was no other estate upon which it might operate.

In default of appointment the trustees of the fund would not be justified to pay. By the articles of agreement they were bound to pay to the surviving members of the family entitled to payment, or to the person or object designated for that purpose. The contract was to pay to no one else; and if there were no

survivors to take, and no persons or objects designated, the trustees were not bound to pay at all.

Judgment and order affirmed.

Ross, J., and McKINSTRY, J., concurring.—We concur in the judgment on the ground that the executors of the deceased Swift cannot sustain the action. Whether or not any other person or persons can do so, it is not necessary, we think, to decide. That the donation in question formed no part of the estate of the deceased cannot be doubted, and that the rights of the plaintiffs as executors are limited to the estate of their testate seems to us equally clear.