LILY KEMP, Plaintiff, *v.* NEW YORK PRODUCE EXCHANGE, Defendant.

*Adopted child — right to inherit a sum payable on the death of a member of the New York Produce Exchange.*

A by-law of the New York Produce Exchange which provides that "Should a member die * * * if he leave children and no widow, then the whole sum shall be paid to the children. * *. * Should the member die leaving neither widow nor children, then the whole sum shall be paid to the next of kin of the deceased, within the limit of representation prescribed by the statutes of the State of New York," passed subsequently to the enactment of chapter 830 of

the Laws of 1873, providing that a child adopted thereunder, and the person adopting him, should thenceforth "sustain toward each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation, except the right of inheritance," creates in favor of an adopted child of a member who died in 1898, leaving no widow or children or remote issue and without next of kin other than such child, a right to the payment of the sum payable on the death of such member.

*It seems,* that the adopted child might claim the fund under the provisions of chapter 703 of the Laws of 1887, as the next of kin, within the Statute of Distributions as modified by that act, although not considered as the child of the deceased member within the meaning of the by-law — the by-law being intended to be construed under the statutes of the State as they existed at the member's death.

SUBMISSION of a controversy upon an agreed statement of facts, pursuant to section 1279 of the Code of Civil Procedure.

*C. Godfrey Patterson,* for the plaintiff.

*Abel E. Blackmar,* for the defendant

CULLEN, J.:

The defendant, a domestic corporation, was, by chapter 36 of the Laws of 1882 (amending chap. 359 of the Laws of 1862), empowered to assess such of its then present members as might agree thereto, and all members who joined thereafter, a sum to constitute a fund to be paid upon the death of any member to his widow, children, next of kin or other persons dependent upon him, in such manner as the by-laws of the defendant might prescribe. Under this authority the defendant constituted a gratuity fund, raised by assessment on the members assenting to and participating in the scheme. Henry Kemp was at this time a member of the defendant, and became a participant in this plan. The by-laws of the defendant made the following provision for the payment of the fund upon the death of any member:

"Should a member die leaving a widow but no children, then the whole sum shall be paid to such widow for her own use. Should a member die leaving a widow and children, then one-half shall be paid to the widow for her own separate use, and one-half to his children, or if he leave children and no widow, then the whole sum shall be paid to the children for their use, share and share alike. * * * Should the member die leaving neither widow nor chil-

dren, then the whole sum shall be paid to the next of kin of the deceased, within the limit of representation prescribed by the statutes of the State of New York, and if there be none such, then the same shall be applied in such manner and to such purposes as may be prescribed in the rules of the New York Produce Exchange."

Henry Kemp died on the 16th of May, 1898, leaving no widow, children or more remote issue, and without next of kin, except the plaintiff, who was adopted by him as a child, under the laws of this State. The controversy is whether under the terms of the by-laws the plaintiff, as such adopted child, is entitled to the fund payable on the death of Henry Kemp.

The defendant is right in its contention that the plaintiff cannot claim through Henry Kemp by succession, but directly of the defendant under its by-laws, and that the question is the proper construction of those by-laws. (*Hellenberg* v. *District Number One, etc.,* 94 N. Y. 580.) It may also be conceded that the plaintiff is not a child of the deceased member in the strict sense of that term, which refers to the physical procreation of the child, and not the legal rights that may have been afterwards conferred upon her by agreement of parties or acts of the Legislature. So it has been said : "Adopted children are not children of the person by whom they have been adopted, and the act of Assembly does not attempt the impossibility of making them such " (*Schafer* v. *Eneu,* 54 Penn. St. 304), and ".Giving an adopted son a right to inherit does not make him a son in fact." (*Commonwealth* v. *Nancrede,* 32 Penn. St. 389.) But this principle is not decisive of the question involved here. The question is not what is the strict accurate meaning of the word child, but in what sense was it used in the by-laws. Already, at the time of the passage of the act empowering the defendant to create its gratuity fund, and of the enactment of the defendant's by-laws in pursuance of such authority, adoption of children was authorized by the laws of this State. By chapter 830 of the Laws of 1873 it was enacted that a child adopted under the provisions of that act, and the person adopting him, should thenceforth " sustain toward each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation, excepting the right of inheritance." The statute of 1882 authorizes the payment from the gratuity fund to the widow, chil-

-dren, next of kin, or other persons dependent on the deceased member. The by-laws state that the object of the gratuity fund is to provide for the families of members. As the law stood at this time, an adopted child was a member of the family of his adopter, and a dependent. Though he was not entitled to inherit from the adopting parent, still such parent could, in a proper case, be compelled to support the child the same as a natural child. It seems to us that, even under the then existing condition of the law, the case of an adopted child fell within the terms of the by-laws, and it was entitled to share in the death fund.

In 1887, however, the statute as to adoption was amended, so as to give the adopted child the right of inheritance. (Laws of 1887, chap. 703.) The effect of this amendment was to modify the Statutes of Distribution and Descent. (*Dodin* v. *Dodin*, 16 App. Div. 42.) From this time the adopted child had the same rights as a natural child, except as to limitations in deeds or wills conditioned on the death of the adopting parent without issue. The by-laws provide that, in the absence of widow and children, the fund shall be paid to the next of kin of the deceased within the limit of representation prescribed by the statutes of the State of New York. Even if the plaintiff be not considered a child of the deceased member within the meaning of the by-laws, she certainly is entitled to the fund as his only next of kin within the Statute of Distributions. Against this it may be urged that the rights of the parties were fixed by the enactment of the by-laws in 1882, and that it is only persons who would have been next of kin in the State of New York, under the law as it then stood, that are entitled to the fund. We think not. The provision that the sum shall be paid to the next of kin of the deceased, as prescribed by the statutes of the State of New York, is to be construed as meaning the statutes of the State as they may exist at the time of the member's decease. This case is not analogous to that of the rights of a party under a deed of settlement or a will. There, on the death of the testator or the delivery of the deed, the rights of the remaindermen would vest, and those rights could not be divested by subsequent legislation. Though even in such case, if the will or deed showed an intent that the distribution should be governed by the laws that might exist at some future time provided for the distribution of the fund, effect would unquestionably be given to

it. In *Sewall* v. *Roberts* (115 Mass. 262) the owner of property settled it in trust for the settler during life, and upon his death for the use of his child or children, and in case of his death without issue, then to others. The settler of the trust died without issue, but subsequent to the creation of the trust adopted a child. It was held that the adopted child took the trust estate. It was there said, speaking of the settler of the trust : " His general intention was that the property should go in the first instance to his children as a class. Whoever at his death fell within this class was within this general intention, and as his adopted daughter is by law his child, she belongs to the class intended to take, and her rights cannot be defeated upon the assumption that he did not intend her to take."

The plan or scheme of the defendant's gratuity fund was permanent. It was entered into not only by persons who were members at the time the plan was formulated, but all subsequent members of the exchange became parties to it. It is not to be supposed that the rights of the families of persons subsequently becoming members were to be governed by the law of distribution in case of intestacy as it stood many years before the members joined the exchange. The very permanence of the plan necessarily contemplates that the distribution was to be made according to the law of the State as it might stand at the time the fund became payable. In this view there were no vested rights in this fund to be disturbed by subsequent legislation. The by-laws provide, in express terms, that nothing therein contained shall be construed as constituting any interest which can be mortgaged or pledged for the payment of any debt. Equally it was incapable of assignment. It was the intention to create provision for the family of the deceased member, which should be beyond the hazard of loss from pecuniary misfortune. But a member might have no immediate family, nor any one dependent upon him. As he was compelled to contribute his assessment upon the death of any other member, it was right that he should, though not personally, at least through representation, reap some benefit from the fund on his own demise. It could not be made payable to his estate, for then it would be liable for his debts, the very thing which the plan was devised to avoid. It was, therefore, made payable, in case of the lack of immediate family, to his next of kin, who might be so remote as to have neither legal nor

moral claim upon the deceased for support, though not unnaturally the subject of his bounty upon his death. It seems to us that it would be most unreasonable to construe this by-law as excluding an adopted child while including a remote relative of the blood. It is said that the deceased adopted the plaintiff for the very purpose of enabling her to obtain this fund, and such is the fact. If the mortuary payment was to be made only to persons who might naturally be supposed to be dependent upon the deceased, and in case of the absence of such persons the amount was to be retained by the defendant, it might with some reason be urged that the adoption of the plaintiff by the deceased was a fraud upon the defendant's rights. But as the by-laws provided for payment to the next of kin, however remote, we cannot see how the exchange is interested in the question of whether it should be paid to one rather than to another.

It is possible that the by-laws may be subject to another construction than the one I have placed on them; that is to say, that next of kin more remote than brothers' and sisters' children are not in any event to share in the mortuary payment, because, by the law as it existed in 1882 (Code Civ. Proc. § 2732), no representation among collaterals beyond such relatives was admitted. This construction is not suggested by the counsel, and I think it is not the correct one. The provision of the by-laws as to representation is intended, in my opinion, only to make the distribution of the fund follow the same rule which, under the statutes of this State, governed the distribution of the personal property of the deceased member in case of his intestacy, that there should be no right of representation beyond nephews and nieces, but that in the absence of next of kin within that degree of consanguinity the nearest next of kin, however remote, should take. But if I err in this view, the only result of the error would be to weaken the argument as to the alleged fraud on defendant's rights by the adoption of the plaintiff; it would not affect the discussion of the main proposition.

There should be judgment for the plaintiff on submitted case, with costs.

All concurred.

Judgment for plaintiff on agreed statement of facts, with costs.