## McCORD v. McCORD.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

ASSIGNMENT—INTEREST OF WIDOW IN GRATUITY FUND.

The New York Produce Exchange, pursuant to Laws 1882, c. 36, authorizing it to provide for the widows and families of deceased members, and providing (section 2) that such proportion of the fund so created, as the by-laws shall provide, may be paid to the widow or others dependent on such decedent, adopted by-laws detailing the procedure for accomplishing such purpose, and providing (section 57, subd. 4) that "nothing herein contained shall be construed as constituting any estate in esse which can be mortgaged or pledged for the payment of debts," etc. *Held*, that the interest of a widow in such gratuity fund is not assignable by the husband before his death, though joined in by the wife, since such disposition is not

only against public policy, but subversive of the constitution and by-laws of the exchange.

Appeal from special term, New York county.

Action by Henry D. McCord against Ida M. McCord, individually and as administratrix of Henry W. McCord, deceased. From a judgment awarding to defendant a sum payable from the gratuity fund of the New York Produce Exchange, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Joseph H. Beall, for appellant.
William A. Duer, for respondent.

BARRETT, J. The single question here is whether Mrs. McCord's interest in this gratuity fund was assignable. The facts are these: Upon the 15th day of October, 1891, Mrs. McCord (her husband, Henry W. McCord, being then alive, and a member of the produce exchange) executed an assignment to the plaintiff of all her right, interest, and claim in and to what is known as the "Gratuity Fund" of that institution. This assignment was also executed by her husband, who was the plaintiff's son, and covered his certificate of membership in the exchange, as well as her rights in the fund. The assignment was so executed to secure the plaintiff for advances made or to be made to this son. There was evidence tending to show that the plaintiff made advances upon the faith of the assignment in excess of the amount payable from the fund; that these advances were made partly for the support of Henry W. and his wife, and partly to pay assessments imposed upon Henry W., as a member of the exchange, under this gratuity plan. That plan was based upon an act of the legislature passed in the year 1882 (chapter 36), which specially authorized the produce exchange "to make provision for the widows and families of deceased members." Section 2 of that act further provided as follows:

"Such present members of said corporation as shall agree thereto, and all persons who shall hereafter join said corporation, may be assessed such sum as shall be provided in the by-laws of said corporation upon the death of any such member agreeing thereto, or who shall thereafter join said corporation; which sum, or such proportion thereof as the by-laws may provide, and such proportion of the surplus income of said corporation as the by-laws may provide, may be paid to the widow, children, next of kin, or other persons dependent upon said deceased member, in such manner as the said by-laws shall prescribe."

Pursuant to this act, by-laws were adopted by the exchange, detailing the procedure for the practical and effective accomplishment of the gratuity fund purpose. Under these by-laws every present member of the exchange was given the option of subscribing to the fund plan within 60 days. Future members were required to subscribe to such plan. It was provided that:

"Upon the death of any subscribing member there shall be assessed against each subscribing membership the sum of three dollars, which shall thereupon become due to the New York Produce Exchange, and shall be a lien on such membership."

The subscribing members were further required to pay the sum so assessed within 30 days, under the same penalty as that attached to the nonpayment of the regular annual assessment for defraying the expenses of the exchange. That penalty involved, primarily, suspension; and, secondarily, upon continuous failure to pay for three months, termination of membership. The only other by-law material in the consideration of the present question is subdivision 4 of section 57, which reads as follows:

"Nothing herein contained shall be construed as constituting any estate in esse which can be mortgaged or pledged for the payments of any debts; but it shall be construed as the solemn agreement of every subscribing member of the New York Produce Exchange to make a gift to the family of each deceased member, and of the exchange to collect and pay over to such family the said gift."

Leaving out of view the assignment in question, Mrs. McCord was entitled to the whole sum payable from this gratuity fund, her husband having died while a member, leaving her as his widow, with no children. Henry W. McCord was a subscriber to this gratuity fund. He died upon the 17th day of June, 1897, and the sum in dispute was realized and collected by the exchange from the surviving members under the plan already referred to.

We think that the provision thus made for the benefit of Henry W. McCord's family was not assignable. Our conclusion is not based upon the fact that Mrs. McCord's interest was contingent. We recognize the rule laid down in Field v. City of New York, 6 N. Y. 179; Stover v. Eycleshimer, *42 N. Y. 620, and other cases, that courts of equity will support contingent interests and expectations, and things which have no present actual existence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them. Our conclusion here is based upon the broad ground that it would not only be against public policy to uphold this assignment, but it would be subversive of this entire plan of beneficence as embodied in the constitution and by-laws of the exchange. That the constitution and by-laws are binding upon all the members of the exchange, and control the distribution of this fund, cannot be disputed. It is idle to say that the intention of the fourth subdivision of section 57, which we have quoted, was limited to the prohibition of an assignment by the member. The member may have an interest in the general gratuity fund, but he has practically no interest in the special sum to be realized and collected upon his death. How could he mortgage or pledge the right to have an assessment levied after his death upon his fellow members, not for the benefit of his own estate, but exclusively for the benefit of his surviving family? It is plain that the by-law in question was not directed solely, or, indeed, at all, against such assignment. It would, in fact, have been wholly unnecessary thus to prevent such an assignment by a member for the payment of his debts. Upon the face of it, no one would lend the member a penny upon such an assignment, or take from him alone a pledge of his family's future rights, as security for his own debt. To give genuine force

and meaning to the by-law, it must be construed as referring to the real beneficiaries. And certainly it is broad enough to embrace them. Thus this by-law may fairly be read: "Nothing herein contained shall be construed as constituting any estate in esse vested in any one which can be mortgaged or pledged for the payment of any debts by any one." What follows emphasizes this intention of the exchange. A solemn agreement is there spoken of to make a gift to the family of each deceased member,—a contradiction in terms, it is true, but a marked expression, even if inherently illogical, of the layman's absolute determination to prevent any deviation of the fund from its beneficent purpose. The same view was taken of these by-laws in Kemp v. Produce Exchange, 34 App. Div. 175, 54 N. Y. Supp. 678, where Cullen, J., observed:

"The by-laws provide in express terms that nothing therein contained shall be construed as constituting any interest which can be mortgaged or pledged for the payment of any debt. Equally it was incapable of assignment. It was the intention to create provision for the family of the deceased member, which should be beyond the hazard of loss from pecuniary misfortune."

The argument against assignability is equally strong upon the ground of public policy. The learned counsel for the appellant contends (we quote from his brief) that "this fund, although connected with a commercial exchange, and called 'gratuity' and 'gift,' is in fact and in effect an insurance project, and as such is subject to the decisions of the courts relative to life insurance." This contention seems fatal to his position. It brings the case directly within the rule laid down in Eadie v. Slimmon, 26 N. Y. 9, and the many subsequent cases in which the principle enunciated in that case was reaffirmed; notably Wilson v. Lawrence, 76 N. Y. 585, and Brummer v. Cohn, 86 N. Y. 11.

"We think," said Smith, J., in Eadie v. Slimmon, supra, "the intent of the statute was to make these policies a security to the family of any married man, and a provision for their use and benefit, and that this intent would be defeated if they were held to be assignable by the wife like ordinary choses in action belonging to her in her own right as her separate property."

This doctrine was formulated in a little different phraseology by Denio, C. J., in his opinion upon the motion for a reargument, as follows:

"The provision is special and peculiar, and looks to a provision for a state of widowhood, and for orphan children; and it would be a violation of the spirit of the provision to hold that a wife, insured under this act, could sell or traffic with her policy as though it were realized personal property, or an ordinary security for money."

This continued to be the law applicable to life insurance until the passage of chapter 821 of the Laws of 1873, supplemented by chapter 248 of the Laws of 1879. This latter enactment permits assignments of policies of life insurance issued upon the lives of husbands for the benefit of their wives with the consent of the husbands. To that extent it permits what the courts had previously said was not permissible. But it goes no further. It does not legislate away the governing principle upon which the rule in the particular class of cases rested. Life insurance policies issued by life

insurance companies upon the lives of husbands for the benefit of their wives are thus legislatively ordained to be assignable. But no other or different method of realizing a provision for the benefit of wives and children, to accrue upon the death of their husbands and fathers, is taken out of the case rule, or withdrawn from its protection. In cases not specifically embraced within the acts of 1878 and 1879, the principle stated in Eadie v. Slimmon still governs. Romaine v. Chauncey, 129 N. Y. 566, 29 N. E. 826. It was there, in effect, held that a wife's alimony was not assignable.

"It is," said Finch, J., "a specific fund provided for a specific purpose, with restraint and limitation written all over its face by the very law and decree which brought it into existence. And here I think we may wisely avail ourselves of one of the analogies which the general term opinion has furnished for our use. Policies of life insurance in favor of the wife on the life of the husband we have persistently held to be nonassignable. We determined that their peculiar character and purpose necessarily took from them the chief and most important characteristic of property in general. * * * We took from them the transferable characteristic of property as such, and tied them closely to their lawful object and purpose. The argument made now would convict us of error then. * * * It does not, therefore, answer the view we have taken of the duty of the court in this case to appeal to the general law of property, and the general duty of the court in respect thereto. The question concerns a species of property of a peculiar and specific character, created and existing for one purpose only, and whose express limitations take it out of the general rule."

The result of this reasoning is that the attack made by the appellant upon the by-laws is without merit. These by-laws are not contrary to, but are in entire accord with, the public policy of this state. They contravene neither its statutory nor common law. On the contrary, they are well adapted to give due effect to the policy expressly ingrafted upon the defendant's charter by the act of 1882, already referred to and quoted. The assistance contemplated by this gratuity fund would readily be defeated were the beneficiaries permitted during the life of the member to devest themselves of a provision made solely for their needs when deprived by death of their natural protector. The view which has been pressed upon us that nonassignability must lead to grave consequences should the raising of money by assignment become essential to save a member from losing his seat, seems far-fetched and trivial as against the supreme purpose and policy of providing an assured fund for the family after death.

There are no other points which call for special consideration. The judgment appealed from was right, and should be affirmed, with costs. All concur.