## Wytheville

### SMITH'S ADMINISTRATOR V. HATKE.

#### June 12, 1913.

1. LIFE INSURANCE — *Eleemosynary Associations* — *Beneficiaries* — *Interest of Subscriber.*—A certificate of membership in a wholly voluntary incorporated association, organized entirely for eleemosynary purposes, providing that the fund contributed upon the death of a subscriber shall be paid to such beneficiary as he may designate, with the right to change the beneficiary at pleasure, upon notice, and containing no provision, under any contingency, for payment of the fund voluntarily donated, in whole or in part, to the subscriber while living, or to his estate after his death, is not an ordinary life insurance policy. Under such a certificate, neither the estate of the subscriber nor his next of kin has any interest whatsoever in the fund where he fails to designate a beneficiary, or where the beneficiary designated dies before the subscriber, or has no insurable interest in his life, or for any other reason is not entitled to the fund. In all such cases the donation reverts to the association. Neither the subscriber in his lifetime, nor his personal representative after his death, has any property rights in the policy. He has only the power to appoint a beneficiary.

Error to a judgment of the Circuit Court of the city of Richmond in an action of assumpsit. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Edward L. Ryan* and *O'Flaherty & Fulton,* for the plaintiff in error.

*Sands & Swartwout* and *Leon M. Bazile,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

The plaintiff in error, as administrator *de bonis non* of Thomas Smith, Jr., deceased, brought this action of assumpsit against the defendant in error, Louis B. Hatke, to recover $1,297.80, which sum was paid to the defendant in the following circumstances: On November 25, 1907, Thomas Smith, Jr., who was a subscriber to an association entitled the "Voluntary Subscription Fund of Pullman Conductors and Office Men," in accordance with the contract, rules and regulations of the association, designated the defendant as his beneficiary in case of his death. Smith died March 6, 1909, and thereupon the association paid the fund to the defendant.

Upon the trial of the case, the defendant demurred to the plaintiff's evidence, and to the action of the circuit court sustaining the demurrer and rendering judgment thereon for the defendant in error, Hatke, this writ of error was granted.

The following is the form of the contract out of which the transaction arose:

"Whereas, it has been deemed advisable that a Mutual and Voluntary Agreement be entered into by the subscribers of these presents and all other like subscribers, that an association be formed, to be entitled 'Voluntary Subscription Fund of Pullman Conductors and Office Men';

"Therefore, be it agreed, That, in the event of the death from any cause whatsoever of a subscriber to this fund, each and every other subscriber shall give and donate the sum of one dollar. The total amount of such subscription to be paid to such beneficiary as may be designated by said subscriber; it being understood that subscriber can at any time change the name of beneficiary upon due notice to District Agent. It is further agreed, That, if any subscriber default in any single call for subscription, that his

name be stricken from the list of subscribers, and that he shall forfeit any claims for benefits under the terms of this agreement."

Rule 6. "All subscriptions must be paid within thirty days after notice of death is received, and when subscriptions are completed in each district a personal check or draft will be made out in the name of the beneficiary and sent to General Agent, who will forward same to home station of deceased."

The association is not a party to this litigation, and the plaintiff in error asserts no demand against it.

The entire fabric of plaintiff's case rests upon the propositions: (1) That the contract between the association and his intestate is to be regarded as an ordinary life insurance policy upon the life of the latter, which, upon his death, constituted an asset of his estate; and (2) that the title of the estate to the fund was not affected by Smith's designation of Hatke as his beneficiary, since, it is said, Hatke had no insurable interest in Smith's life, either as creditor or in any other capacity. Therefore, that his designation as a beneficiary was a mere wager contract on the life of Smith and was void as contrary to public policy. Unless the first proposition can be maintained, there will be no occasion to concern ourselves about the second. In other words, unless the fund is an asset of Smith's estate, the action cannot be maintained by his administrator for its recovery, whatever may be the infirmities in Hatke's title.

The case of the *Cosmopolitan Life Insurance Company* v. *Koegel*, 104 Va. 619, 52 S. E. 166, is relied on for the contention that this is an ordinary life insurance policy, and that upon the death of the insured title to the fund, by operation of law, devolved upon his personal representative. An examination of the record in that case shows that the "Royal Tribe of Joseph" (in which order Koegel held a benefit certificate, or policy of insurance, on his life

for $2,000 for the benefit of his wife) was an incorporated organization by the laws of the State of Missouri, under the supervision of the insurance department, with a written constitution, general laws, by-laws and rules for its government. It had a full corps of trustees, bonded officers, medical examiners, and such other agents as are usually found on the rolls of other mutual life insurance companies; and also prescribed a membership age limit, with graduated scale of premium rates, payable periodically. In short, it was a regularly equipped mutual benefit insurance company, with supreme, grand and subordinate lodges, and was carrying on that sort of life insurance business throughout the United tSates. The authorities are generally agreed in classifying such organizations as mutual life insurance companies.

On the other hand, the association in the instant case is unincorporated, and, as its name imports, is a mere "Voluntary Subscription Fund of Pullman Conductors and Office Men," organized wholly for eleemosynary purposes, and containing no provision, under any contingency, for payment of the fund voluntarily donated, in whole or in part, to the subscriber while living or to his estate after death. On the contrary, the contract expressly stipulates, in language too plain to be misunderstood, that the total amount of the subscription is to be paid to such beneficiary as may be designated by the subscriber; and, moreover, that the subscriber can at any time change the name of the beneficiary upon notice to the district agent.

It has been repeatedly held, by courts of high authority, that under similar certificates neither the estate of the subscriber nor his next of kin has any interest whatsoever in the fund where he fails to designate a beneficiary, or where the beneficiary designated predeceases the subscriber, or has no insurable interest in his life, or for any other reason, is not entitled to the fund. In all such cases the donation reverts to the association.

In *Leftwich* v. *Wells,* 101 Va. 255, 43 S. E. 364, 99 Am. St. Rep. 865, this court held that under a similar policy the subscriber had no property rights therein, but only the power to appoint a beneficiary. To the same effect are the following decisions from other States: *Hellenberg* v. *Dist. No. One of I. O. of B. B.,* 94 N. Y. 580; *Taylor* v. *Hair,* 112 Fed. 913; *Warner* v. *Modern Woodmen of America,* 67 Neb. 233, 93 N. W. 397, 61 L. R. A. 603, 108 Am. St. Rep. 634, 2 Ann. Cas. 660; *Cook* v. *Improved Order Heptasophs,* 202 Mass. 85, 88 N. E. 584; *Swift* v. *S. F. S. & E. Board,* 67 Cal. 567, 8 Pac. 94. Other authorities to the same point could be cited, but those given sufficiently sustain and illustrate the principle involved.

As corollary to the proposition that decedent's estate has no property rights in the fund, it follows that his personal representative cannot question Hatke's title thereto. *Maguire* v. *Maguire,* 59 N. Y. App. 143, 69 N. Y. Supp. 61; *Munhall* v. *Daly,* 37 Ill. App. 628; *Johnson* v. *Van Epps,* 110 Ill. 551; *Meyers* v. *Schumann,* 54 N. J. Eq. 414, 34 Atl. 1066; *Stoelker* v. *Thornton,* 88 Ala. 241, 6 South 680, 6 L. R. A. 140.

Upon these considerations we find no error in the judgment of the circuit court, and it is affirmed.

*Affirmed.*