CENTRAL HANOVER BANK AND TRUST COMPANY, AS EXECUTOR OF THE ESTATE OF EDWARD L. NORTON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 88451. Promulgated July 25, 1939.

*Ruth Lewinson, Esq.*, for the petitioner.
*Harold F. Noneman, Esq.*, for the respondent.

#### OPINION.

MELLOTT: The Commissioner determined a deficiency in estate tax in the amount of $1,655.98, all of which is in issue. The sole question is whether or not the sum of $20,000 received by the guardian of decedent's only child is includable in decedent's gross estate. The salient facts, all of which were stipulated, may be summarized.

The petitioner, a corporation having its principal place of business in New York City, is the duly qualified and acting executor under the last will and testament of Edward L. Norton, deceased, who died prior to January 28, 1935. Pauline H. Norton, as general guardian of Edward L. Norton III, the only child of the decedent, who at the time of decedent's death was three years of age, received the sum of $20,000 by check dated September 30, 1935, issued by the trustees of the gratuity fund of the New York Stock Exchange. The Commissioner has included said sum in decedent's gross estate "on the ground that it is insurance taken out by the decedent on his own life and payable to beneficiaries other than the estate within the meaning of section 302 (g) of the Revenue Act of 1926." [1]

The constitution of the New York Stock Exchange provides that before one may be admitted to the privileges of membership he shall pay to the trustees of the gratuity fund, consisting of the president and treasurer of the exchange and five others, the sum of $15. By signing the constitution he also "pledges himself to make, upon the death of a member of the Exchange, a voluntary gift to the family of each deceased member in the sum of fifteen dollars, which shall be paid by the member at quarterly periods on the dates on which dues to the exchange are paid." The faith of the exchange is pledged to pay, within one year after the proof of death of any member, out of the moneys so collected, the sum of $20,000 which, in the language of the constitution, "shall be a voluntary gift from the other members of the Exchange, free from all debts, charges or demands whatever"; that the obligation to make payment shall not be construed as a joint liability of the exchange or its members, "the liability of each member, at law or equity, being limited to the payment of fifteen dollars only on the death of any other member, and the liability of the Exchange being limited to the payment of the sum of twenty thousand dollars, or such part as may be collected  *  *  *"; that nothing contained in the agreement shall be construed "as constituting any estate *in esse* which can be mortgaged or pledged for the payment of any debts"; and that it shall be construed "as the solemn agreement of every member of the Exchange to make a voluntary gift to the family of each deceased member, and of the Exchange, to the best of its ability, to collect and pay over to such family, the said voluntary gift."

The constitution designates the beneficiaries to whom payment of

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

　*　　　*　　　*　　　*　　　*　　　*　　　*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

said sum shall be made, other beneficiaries may not be selected or designated by a member, and the payment in issue here was made to and for the benefit of the beneficiary described in the constitution. Other sections provide that a member who shall neglect to make "a contribution to the Gratuity Fund for 45 days after the same shall become payable * * *, after due notice, shall be suspended until payment is made", and if payment is not made within one year after payment is due, the membership of the delinquent may be disposed of by the committee on admissions.

In the year 1934 there were approximately 1,374 members of the exchange, so the amount collected by the treasurer pursuant to bills rendered was in excess of the $20,000 payable by the trustees to the family of any deceased member. Gratuity fund payments made by the members of the exchange pursuant to bills rendered, in excess of the amount payable to the family of a deceased member, were accumulated by the trustees of the gratuity fund in a reserve fund, interest on which was credited pro rata annually to the members of the exchange.

The petition alleges that since the decedent had no interest in the gratuity fund of the exchange, exercised no control over it during his lifetime, and had no power to designate the beneficiary upon his death, the $20,000 payment was a gift from the members of the exchange to the decedent's next of kin and therefore not includable in his gross estate. (No brief was filed by petitioner.) The respondent contends, as set out above, that the amount is includable in decedent's gross estate as insurance taken out by the decedent on his own life and payable to beneficiaries other than the estate.

It is apparent from a reading of the constitution of the exchange that a studious effort was made to avoid setting up the gratuity fund in such a way that either the exchange itself or its members could be construed to be engaged in the business of life insurance. Thus the amount to be paid is several times characterized as "a voluntary gift" or "contribution", the fund is designated as a "gratuity", the members agree "to contribute to the provision for the families of deceased members", the exchange agrees "to collect and pay over to such family the said voluntary gift", and it is provided that the obligation shall never be construed to be a joint liability of the exchange and its members or a liability of the exchange to do more than pay over the amount "after it shall have been collected from the members, and not otherwise." Other facts and circumstances tending to support the view that the amount in question was not paid "as insurance under policies taken out by the decedent upon his own life" are, that no policy was ever issued, the deceased made no application for insurance

there is nothing to indicate that an insurance or investment risk was undertaken by the exchange or its members, the amount of the individual contribution was not determined by reference to tables of experience and mortality customarily used in insurance, no definite sum was agreed to be paid unless collected, the member could not designate the beneficiary, no medical examination or personal history statement was required, and neither the member nor the beneficiary had any property right in the fund until collection, subsequent to the death of the member, was made. Reasoning somewhat along this line, the Supreme Court of California, in *Swift* v. *San Francisco Stock & Exchange Board*, 67 Cal. 567; 8 Pac. 94, held that the exchange board was not engaged in the business of insurance even though its constitution required the member to file with its secretary a medical certificate attesting his fitness to be a participant in what was designated by the constitution as the "Life insurance fund." Cf. *Old Colony Trust Co. et al., Executors*, 37 B. T. A. 435; affd., 102 Fed. (2d) 380; *Donald* v. *Chicago, B. & Q. Ry.*, 93 Iowa, 284; 61 N. W. 971; *Ballou* v. *Gile*, 50 Wis. 614; 7 N. W. 561; *Smith's Administrator* v. *Hatke*, 115 Va. 230; 78 S. E. 584.

But even though the exchange did not issue a policy of insurance it did make a "promise or agreement with its members whereby, upon the decease of a member, * * * money or other benefit, charity, relief or aid is to be paid, provided or rendered * * * derived from voluntary donations or from admission fees, dues or assessments." The quotation is from section 201 of the New York Insurance Law, which concludes that any corporation, association or society so doing "shall be deemed to be engaged in the business of life insurance upon the co-operative or assessment plan * * *." If the contract is to be construed and interpreted under the laws of New York, *Liverpool & Great Western Steam Co.* v. *Phenix Insurance Co.*, 129 U. S. 397; *Mutual Life Insurance Co. of New York* v. *Cohen*, 179 U. S. 262; *Louise C. Moore, Executrix*, 33 B. T. A. 108; cf. *Lyeth* v. *Hoey*, 305 U. S. 188, the following cases tend to support the view that the exchange may have been "engaged in the business of life insurance upon the co-operative or assessment plan" within the purview of the New York statute. *Commonwealth* v. *Wetherbee*, 105 Mass. 149, 160; *Sauerbrunn* v. *Hartford Life Ins. Co.*, 220 N. Y. 363; 115 N. E. 1001; *Evans* v. *Supreme Council of Royal Arcanum*, 223 N. Y. 497; 120 N. E. 93; *Massey* v. *Mutual Relief Society of Rochester*, 102 N. Y. 523; 7 N. E. 619; *Alden* v. *Supreme Tent of the Knights of the Maccabees of the World*, 178 N. Y. 535; 71 N. E. 104; *Sims* v. *Commonwealth*, 114 Ky. 827; 71 S. W. 929; *Cosmopolitan Life Insurance Association* v. *Koegel*, 104 Va. 619; 52 S. E. 166; *State* v. *Willett*, 171 Ind. 296; 86

N. E. 68; *Robinson* v. *Brotherhood of Railroad Trainmen*, 80 W. Va. 567; 92 S. E. 730, and *Sheridan* v. *Thibodaux Benevolent Association* (La.), 134 So. 360.

But the issue before us may be determined without deciding whether the exchange was, or was not, engaged in the business of insurance or whether the amount was received by the beneficiary "as insurance under policies taken out by the decedent upon his own life"; for, while the amount is not includable unless it was received "as insurance", it does not necessarily follow that it is includable merely because it was so received.

It has been pointed out in many cases that the inclusion in gross estate of the proceeds of contracts or policies of insurance depends primarily upon whether or not the decedent retained a legal interest in the contract or policy giving him a power of disposition; for it is the termination at death of that power and the passing to the designated beneficiary of all rights under the policy, which subjects it to the estate tax. *Chase National Bank* v. *United States*, 278 U. S. 327; *Bingham* v. *United States*, 296 U. S. 211; *D. W. Blacksher et al., Executors*, 38 B. T. A. 998 (on appeal, 5th C. C. A.); *Thomas C. Boswell et al., Executors*, 37 B. T. A. 970 (petition to review dismissed); *Keefe* v. *Broderick*, 25 Fed. Supp. 957; *Ballard* v. *Helburn*, 9 Fed. Supp. 812; affd., 85 Fed. (2d) 613. An estate tax is an excise tax upon the privilege of transferring property by reason of death and is not a tax on the property itself. *Knowlton* v. *Moore*, 178 U. S. 41; *Tyler* v. *United States*, 281 U. S. 497. Therefore, "unless there is such transfer from the decedent—unless there was something which passed from the decedent upon death—there has been no transfer; no privilege of transfer has been exercised; and there is nothing which can be subject to an excise tax on such privilege." *Walker* v. *United States*, 83 Fed. (2d) 103, 106. Cf. *Old Point National Bank, Executor*, 39 B. T. A. 343.

Legal incidents of ownership in a policy of insurance presupposes that the insured or his estate has a right to some of the economic benefits flowing from it such as the power to change the beneficiary, to surrender and cancel the policy, to assign it, to pledge it as security for a loan, to dispose of it and its proceeds for his own benefit during his life, or to subject it, during his life, to the payment of his debts. *Chase National Bank* v. *United States, supra*. The decedent had no such powers or rights under the constitution of the exchange. The beneficiaries were designated by it and he had no right to change them. He had no rights under the agreement which could be "mortgaged or pledged for the payment of any debts" and the constitution specifically provided that he had no estate *in esse*. No matter how long he remained a member, or how many contributions he made to the fund,

he never acquired any interest which could be likened to a cash surrender value of a policy of insurance. Cf. *McCord* v. *McCord*, 40 App. Div. 275; 57 N. Y. S. 1049; *Kemp* v. *New York Produce Exchange*, 34 App. Div. 175; 54 N. Y. S. 678; *Holmes* v. *Seamen*, 184 N. Y. 486; 77 N. E. 724.

Respondent contends that decedent possessed certain legal incidents of ownership at the time of his death in that he had the power, prior to his death, to dispose of his seat on the exchange with all of its attending benefits, including the right of his next of kin to share in the gratuity fund; that a beneficial interest in the fund passed to his son since he was a member of the exchange at his death; and that the termination of the power to dispose of such fund by ceasing to be a member of the exchange operates as an effective transfer and therefore justifies the inclusion of the $20,000 under section 302 (g) of the Revenue Act of 1926, *supra*.

We do not agree with this contention. The constitution of the exchange provides that if a member dies leaving a widow and no issue, the whole sum of $20,000 shall be paid to her. If he leaves both a widow and issue, one-half is payable to the widow and one-half to the issue. If he leaves issue but no widow, the whole is payable to the issue. The present record indicates that the last clause was found to be applicable in connection with the death of the decedent. It is apparent therefore that the rights of any beneficiary in the gratuity fund became vested prior to the time of the decedent's death and that it was beyond his power, as long as he remained a member of the exchange, to affect the interest of such a beneficiary. His death merely put an end to the possibility that he, prior thereto, might cease to be a member of the exchange and that the vested interest of any beneficiary in the gratuity fund might thus become divested. In our opinion this right to terminate the interest of any beneficiary was not such an interest or incident of ownership as the Supreme Court had reference to in *Chase National Bank* v. *United States*, *supra*. It is our conclusion, therefore, that decedent had no legal interest in the contract or policy which terminated at his death. *Bingham* v. *United States*, *supra; Industrial Trust Co.* v. *United States*, 296 U. S. 220; *Walker* v. *United States*, *supra; Guaranty Trust Co. of New York et al., Executors*, 33 B. T. A. 1225; *Pennsylvania Co. for Insurances on Lives & Granting Annuities* v. *Commissioner*, 79 Fed. (2d) 295.

The respondent erred in including the sum in issue in decedent's gross estate.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*

KERN concurs only in the result.