Estate of Raphael A. Casilear, the Lincoln National Bank of Washington, et al., Executors v. Commissioner.
Estate of Raphael A. Casilear v. Commissioner
Docket No. 6485.
United States Tax Court
1945 Tax Ct. Memo LEXIS 52; 4 T.C.M. (CCH) 970; T.C.M. (RIA) 45328; October 26, 1945
Meredith M. Daubin, Esq., Munsey Bldg., Washington, D.C., for the petitioner. Elmer L. Corbin, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves Federal estate taxes, deficiency have been determined in the amount of $1,760.28. Certain issues set forth in the petition have, by agreement, been eliminated from consideration, and will be reflected in decision to be entered under Rule 50. There is, therefore, left for examination the following questions: (a) Whether there should be included in gross estate $2,000 paid by the Washington *53 Stock Exchange, after decedent's death, to one Lottie M. Rosenberger, under direction given by the& decedent; (b) whether the Commissioner erred in allowing only $11,161.93 as a deduction from gross estate for a charitable devise. [The Facts] The petitioners, executors of the estate of the decedent, Raphael A. Casilear, filed the Federal estate tax return with the collector of internal revenue for the district of Virginia, at Richmond, Virginia. The decedent died testate on November 16, 1940. The decedent was at the time of his death, and for several years had been, a member of the Washington Stock Exchange. The constitution of that organization at all times here pertinent provided as follows: "Article XI, Section 1. The faith of The Washington Stock Exchange is hereby pledgde in favor of every member who shall die while in good standing and not suspended from any of the privileges of membership, to pay within three months from and after proof of his death, to the lawful widow of such member, or if none, then to his next of kin according to the provisions of the Law of the District of Columbia at the time of his death, or to such person or persons other than widow or next *54 of kin, as the deceased member by a written paper previously signed by him and filed with the Secretary of the Exchange may have directed, the sum of Two Thousand Dollars ($2,000.00), as a gratuity, free from any debts, charges or demands whatsoever." By his will, dated October 5, 1932, and probated after his death, the decedent provided, inter alia, as follows: "FIRST: I direct that my just debts and the expenses of my funeral and burial be paid from my Estate by my Executor, hereinafter named, as soon after my death as shall be convenient. "As a means of providing ready funds for the payment of said debts and expenses, I expressly authorize and direct my Executors hereinafter named to collect the proceeds of insurance on my life in the sum of Two Thousand Dollars ($2,000) to which I am entitled as a member of the Washington Stock Exchange, as soon after my death as practicable, and apply same towards payment of any debts I may leave as well as the expenses of my funeral, if necessary for that purpose. For the purpose of receiving payment of said life insurance I designate my Executors hereinafter named as beneficiary of the said policy of life insurance." On February 9, 1940, the *55 decedent assigned the right to receive the $2,000 to Lottie M. Rosenberger; and on December 5, 1940, the Washington Stock Exchange paid the $2,000 to her. The decedent's will provided that, after the death of Lottie M. Rosenberger, Dorothy Marie Marston and Viola Atlee Marston, the remainder interest in a farm and in certain other property should go to the City Orphan Asylum, a charitable institution. The estate tax return valued the devise at $11,161.93, and that value was accepted by the Commissioner. Though in determining the deficiency the Commissioner did not include the $2,000 paid to Lottie M. Rosenberger in gross estate, by his answer filed to the petition he asserts error and argues that such amount belongs to the estate. The burden of proof in that respect is therefore upon the respondent. The petitioner contends first that the $2,000 is no part of gross estate, and second that the Commissioner erred in not allowing as a deduction from gross estate because of the charitable devise, a greater sum than $11,163.93, the argument being that in determining the amount of deduction for charitable devise, the factor $.021656 should be used, in order to value the devise at the *56 date of decedent's death and take into consideration the then age of the youngest life tenant. We first consider whether the $2,000 should be included in gross estate. In our opinion it is clearly so includible. The payment by the Washington Stock Exchange was not insurance, as both parties agree. The petitioner argues that it was a gratuity, not owned by decedent at time of his death, and cites Central Hanover Bank & Trust Co., Executor, 40 B.T.A. 268. In that case, however, it is particularly stressed that the amount to be paid by the New York Stock Exchange on the death of a member was payable to beneficiaries designated in the constitution of that Exchange, and the member had no right to make any other designation. In concluding that the amount was not includible in gross estate, we said: Legal incidents of ownership in a policy of insurance presupposes that the insured or his estate has a right to some of the economic benefits flowing from it such as the power to change the beneficiary, to surrender and cancel the policy, to assign it, to pledge it as security for a loan, to dispose of it and its proceeds for his own benefit during his life, or to subject it, *57 during his life, to the payment of his debts. Chase National Bank v. United States, supra. The decedent had no such powers or rights under the constitution of the exchange. The beneficiaries were designated by it and he had no right to change them. He had no rights under the agreement which could be "mortgaged or pledged for the payment of any debts" and the constitution specifically provided that he had no estate in esse. No matter how long he remained a member, or how many contributions he made to the fund, he never acquired any interest which could be likened to a cash surrender value of a policy of insurance. * * * The present case presents the opposite situation, for here the decedent had a right to, and did, exercise the right to select the beneficiary whom the $2,000 should be paid, and it was so paid. The decedent had a right to have payment of the $2,000 made to his nominee, constituting a property interest in the fund, and the fact that the amount to be paid was referred to in the constitution of the Exchange as a "gratuity," does not alter the fact of such interest. The power of disposition being in the decedent, we hold the $2,000 to be includible in his estate, under *58 section 811 (c) of the Internal Revenue Code. With reference to the charitable devise and computation of the amount thereof: Though the record does not otherwise so show, the parties both ask for a finding of fact that the estate tax return valued the charitable remainder at $11,161.93, which value was accepted by the Commissioner; and we therefore so find, considering the two requests as an agreement. The petitioner argues that the charitable remainder devised should be calculated upon valuation at the date of decedent's death, using a factor based upon the age, at that date, of the youngest life tenant; while the respondent argues that the petitioner has failed to overcome the presumption of correctness of the determination made. On this issue, we find the record peculiarly barren of facts. The explanatory statement, if any there was, attached to the deficiency notice, is not in the record herein. The petitioner says, upon brief, that the Commissioner increased net estate by $34,707.96, and at trial (though not in the brief) contended that this was due to valuation at the date of death, instead of one year thereafter under petitioner's election; and that *59 the value of the charitable remainder was not increased acordingly; while the respondent, in effect, argues that the difference is due to difference in the factor used, and that the Commissioner used a different factor, based upon the life expectancies of three life tenants, instead of only the youngest, as used by the petitioner. In the state of the record, and without evidence on the matter, we cannot say that the Commissioner's determination is incorrect or has been overcome. On this issue, therefore, we find no error in the determination. Fidelity-Philadelphia Trust Co., et al., Executors, 27 B.T.A. 972. Decision will be entered under Rule 50.