NATIONAL COLORED AID SOCIETY *v.* STATE EX REL. WILSON, PROSECUTOR.

[No. 26,225. Filed June 11, 1935.]

Clarence C. Wysong, Clinton H. Givan, and *Pickens, Gause, Gilliom & Pickens,* for appellant.

Assistant Attorney-General, *Herbert E. Wilson* and *Joseph G. Wood,* for appellee.

HUGHES, J.—As stated by the appellant, this was an action brought by the State of Indiana on the relation of Herbert E. Wilson, prosecuting attorney for the 19th Judicial District of the State of Indiana against the National Colored Aid Society in the form of an information to the Circuit Court of Marion county, Indiana, whereby the State of Indiana on the relation of Herbert E. Wilson, prosecutor, contended that the appellant herein was violating its charter as a corporation organized under the so-called non-profit act of 1889, in that the appellant was in effect writing insurance, and that under its charter it had no right to engage in the enterprise, for the reason that the appellant corporation in so acting was engaged in a commercial enterprise and in a profit-making enterprise.

The information further contended that the agents of the appellant company were making misrepresentations to those whom they solicited for membership. It also contended that the appellant corporation had not complied with the law of Indiana, by providing for reserve in the payment of losses as prescribed by the insurance law of the State of Indiana.

It further contended that the large numbers of people were subscribing to the membership of the appellant corporation, believing it to be insurance, and asked that the franchise of the appellant corporation be forfeited and the corporation dissolved and its officers and agents be enjoined from soliciting, selling, issuing, and executing said contracts.

The appellant filed an answer of general denial to the complaint and the cause was submitted to the court upon an agreed stipulation of facts. The court found against the appellant and permanently enjoined it from

the sale, collection of, execution, and/or delivery of membership contracts, and ordered that the charter of the corporation be forfeited.

A motion for a new trial was filed by appellant and overruled by the court. The errors relied on for reversal, and properly assigned, are as follows:

(1) The decision of the court is not sustained by sufficient evidence.

(2) The decision of the court is contrary to law.

The correctness of the decision and judgment of the court depends upon the agreed statement of facts, and it therefore becomes necessary to set out those facts stipulated material to a proper consideration of the case.

The parties' stipulated facts are as follows:

"2. That said defendant is a corporation duly incorporated on August 8, 1930, under the laws of the State of Indiana, governing the incorporation of societies, associations and clubs not for pecuniary profit, Acts of 1889, page 141, approved March 6, 1889, entitled: 'An act for the incorporation of societies not for pecuniary profit, defining their powers and providing for the election of directors, the dissolution of such corporation, distribution of their property, and the changing of their articles of association, and declaring an emergency.'

"3. That a copy of the articles of association as originally filed and now on file with the Secretary of State of Indiana by said defendant corporation is attached hereto, made a part hereof and marked 'Exhibit A.' That said articles of incorporation so filed with the Secretary of State were duly recorded in the office of the Recorder of Marion county, Indiana, on the 14th day of August, 1930, at the hour of 9:40 o'clock a. m., as appears of record therein, Miscellaneous Record 224, page 397.

"4. That said defendant corporation is now and has

been since said date of its said incorporation engaged in the business of soliciting and securing membership certificates in the State of Indiana and elsewhere from numerous persons of the Negro race, and is now and has been soliciting and securing membership certifiates from numerous persons of the Negro race in said State of Indiana and elsewhere during said period of time, in all things like to a blank copy of same attached hereto, made a part hereof and marked 'Exhibit B.'

"5. That said 'Exhibit B' shall be taken and accepted as the exact membership certificate and contract which at all times mentioned herein has been duly executed and issued by the officers of said defendant corporation to its members in Indiana and elsewhere.

"6. That at all times mentioned herein the by-laws of said defendant corporation were and are the same as a copy of the same attached hereto, made a part hereof and marked 'Exhibit C.'

"7. That said defendant corporation at all times herein mentioned has continuously maintained offices in the State of Indiana and has continuously employed officers and employes at stipulated salaries, wages and commissions in the conduct of its business.

"8. That said defendant corporation maintains no fund for the payment of benefits to its members created by payments by its members other than those paid pursuant to the provisions of said membership certificate and said by-laws.

"9. That when said membership certificate is issued by said corporation, the applicant member pays a membership fee for the issuance of said certificate, and that any and all payments made by any member and received under the terms of said certificates of membership paid to said corporation are in addition to said membership fee paid by the member at the time of his application

for membership, and said defendant corporation's issuance to him of said membership certificate.

"10. That said defendant corporation has been and is now employing numerous and various agents in the State of Indiana and other states within the United States for the solicitation of such membership certifiates and that said agents receive as compensation for such solicitation the membership fee provided in said membership certificates.

"11. That in addition to losses paid under said membership certificate the salaries of officers and employes of defendant corporation and the operating expense of the corporation are paid out of payments made by the members under and pursuant to the provisions of said membership certificates and said by-laws, and that said defendant corporation has heretofore called for said payments from its membership, will continue to call for payments from its membership as the need for payment arises, all under and pursuant to the terms of said membership certificate and said by-laws in the State of Indiana and elsewhere at all times herein mentioned.

"12. That said defendant corporation is not now and never has been licensed as an insurance company or association under the laws of the State of Indiana relating to and governing insurance companies, nor has it at any time ever applied for or received such a license.

"13. That said defendant corporation has no means or fund for the payment of losses sustained by any of its members pursuant to the terms of said membership certificate other than the fund created as hereinabove stated and has provided for no reserve for the payment of any losses pursuant to the terms of said membership certificate, and that said defendant corporation has no

means, money, or income to pay losses other than that received by said corporation upon notice made in accordance with the terms of said certificate of membership.

"14. That in accordance with said certificate of membership, said defendant corporation has received payment from its members on notice of a loss and has paid benefits in accordance with said membership certificate and said by-laws. . . .

"16. That said defendant corporation is not a secret or fraternal society or lodge or association which under the supervision of a grand or supreme lodge secures membership through the lodge system exclusively and provides insurance to its members, nor is said defendant corporation a religious or secret society nor a class of mechanics, express, telegraph or railroad employes' association, nor an ex-union soldiers' association formed for the mutual benefit of the members thereof and their families exclusively, nor has said defendant corporation any ritualistic work and ceremony, nor is it under the supervision of any grand or supreme body or lodge.

"17. That said defendant corporation furnishes no benefits of any kind to any member other than that set out in said certificate of membership and said by-laws."

The articles of association as filed with the Secretary of State provided that:

"1. The name or title by which the corporation shall be known in law is: National Colored Aid Society.

"2. The particular objects for which it is formed are: To unite reputable men and women of the Negro race who are wage earners, not for pecuniary profit, but for the purpose of giving aid to widows, widowers, creditors and those dependent on its deceased members

(nothing in the above shall be construed as to include caring for dependent children) and to aid its members who become totally disabled, all such aid to be voluntary contributions and not by fixed dues or assessments."

The form of the membership certificate was as follows:

"Incorporated under the laws of the State of Indiana.
No._____        Age_____

## NATIONAL COLORED AID SOCIETY
### Indianapolis, Indiana

Hereby Agrees That

In Consideration of the Membership Fee of Five Dollars and a Registration Fee of One Dollar, the application executed by the member, and the further payment of all amounts required to be paid under the conditions of this certificate, during the continuance of this certificate of membership, entitles_____

_____ (hereinafter called the member) to all the benefits as provided in the By-Laws of this Society, and in the event of the NATURAL DEATH of said member entitles_____

_____named as BENEFICIARY, to an amount not to exceed the MAXIMUM BENEFIT, according to age, as designated in Schedule Below:

| 1 to 10 Yrs. inclusive | 11 to 50 Yrs. inclusive | 51 to 60 Yrs. inclusive | 61 to 70 Yrs. inclusive |
|---|---|---|---|
| $500 | $1,000 | $800 | $500 |

71 to 80 Years
inclusive
$250

Subject, however, to the conditions named in the By-Laws hereinafter set forth and hereby made a part hereof.

## Disability Benefits
### Specific Losses

If the member shall, through violent, external and purely accidental means, sustain bodily injuries which shall, independently and exclusively of all sickness and all other causes, immediately, continuously and wholly disable the Member from the date of the accident and result in any of the following specific losses within thirty days from date of accident, the Society will pay the benefits set out below, in lieu of all other benefits, provided, always, that the amounts specified below shall be payable only in case the natural death benefits at time of loss is for a total of one thousand dollars. If such natural death benefit at time of loss is less than one thousand dollars, then the amount to be paid shall be reduced proportionately.

For Loss of Life _____$1,000
For Loss of Both Eyes _____ 1,000
For Loss of Both Hands _____ 1,000
For Loss of Both Feet _____ 1,000
For Loss of Hand and Foot _____ 1,000
For Loss of Either Hand _____ 250
For Loss of Either Foot _____ 250
For Loss of Either Eye _____ 250

Loss in every case referred to in the above schedule for dismemberment of hands or feet shall mean severance at or above the wrist or ankle joint, respectively, and loss of eye or eyes shall mean the total and irrevocable loss of entire sight thereof. Only one of the amounts named will be paid for injuries resulting from one accident, and all are subject to the conditions named in the by-laws hereinafter set forth and made a part hereof.

In Witness Whereof, the signature of the President and Registrar, and Seal of the NATIONAL COLORED

AID SOCIETY, of INDIANAPOLIS, INDIANA, is affixed.

This the_____day of_____,
A. D. 193__.

Registrar_____

C. T. RAPP,
President."

The by-laws of the organization are lengthy and it will serve no purpose to set them out in full, but we will only note those that we think are necessary to a disposition of this case.

Article 1, section 2, limits the membership to members of the Negro race.. Section 3 of said article provides that the applicant may apply for membership by signing an application and paying in advance the membership fee of $5.00 and registration fee of $1.00. Section 2 of article 2 provides that the officers shall be a president, vice-president, and secretary-treasurer, and section 6 of article 7 provides that these officers shall be paid their salaries out of expense assessments and policy fees, reinstatement charges as directed by the board of directors. Stamps, printed supplies, printing, advertising, and expense of adjusting, investigating, and defending claims shall be paid out of the contributions collected for deaths and disabilities.

Section 1 of article 5 provides:

"When a death or permanent disability shall occur to a member to which this contract is issued and the society is liable therefor it shall be the duty of each member to make a contribution if the directors deem it necessary, which contribution will be one dollar. This is the only time a contribution is required, except for expenses. No member will be called upon to contribute to the expense of the society in excess of four dollars during any calendar year, which calendar year begins

on January 1 and ends on December 31, both inclusive. These expense contributions shall be made at the discretion of the board of directors. Should the amount collected from one death contribution amount to more than the amount due, the balance shall be held in trust by the secretary to pay other items that are to be paid out of death funds or the payment of future death or disability benefits and to pay any contribution or payment that may become due. Any benefits mentioned in these by-laws or anywhere in the contract issued are conditioned upon same being collected from the members, if same is not already on deposit, and the total liability of this society shall not in any case exceed the amount collected from the remaining members. It is further agreed and understood that the directors shall not have power to call for contributions more than once every thirty days and in no event can they call for more than two dollars at any one time, should the proceeds of one two-dollar death contribution call collected amount to less than the total liability of the association for deaths occurring during any calendar month, then in that event the beneficiaries shall receive and accept their proportionate share of amount collected as full payment of all liability under the certificate. In no case, however, shall the maximum benefit exceed the maximum amount in force under the certificate at time of death. Said member shall not be entitled to any of the benefits mentioned herein if death occurs while violating any criminal law or if death is caused by the intentional act of a beneficiary. In the event of suicide, sane or insane, or injuries, fatal or otherwise, intentionally inflicted upon the member by him or herself, or any other person, the society shall not be liable for any amount greater than the sum of the contributions paid by the member his or her certificate."

Among other provisions section 1 of article 7 provides: "Every member of this society shall, within thirty days after the mailing of any notice, of contribution, pay the amount thereby requested from him or her, and a failure so to do shall ipso facto suspend the member so failing from all rights and benefits in this society."

The section of the statute under which the appellant incorporated is section 5485, Burns 1926, section 25-2101, Burns 1933, and section 10577, Baldwin's 1934, provides as follows:

"Societies, associations, and clubs not for pecuniary profit may be incorporated as hereinafter provided. Any three (3) or more persons, citizens of the United States, who shall desire to associate themselves for any lawful purpose other than for pecuniary profit, may make, sign and acknowledge, before any officer having a seal and authorized to take acknowledgments of deeds in this state, and file in the office of the secretary of state, and in the office of the recorder of the county in which such society, association or club shall be located, a certificate in writing in which shall be stated the name or title by which such corporation shall be known in law, the particular objects for which it is formed, the number of its directors, and the names of the directors selected for the management of its business and prudential concerns for the first year of its existence. Upon complying with the foregoing conditions, the corporation shall be deemed fully organized, and may proceed to carry out the objects of its organization: Provided, The secretary of state shall not file a certificate of organization of any corporation having the name of any then existing, but shall notify the subscribers, or any two of them, of the reason of his refusal so to do."

It is further provided by statute, section 1208, Burns 1926, section 3-2001 Burns 1933, section 1045, Baldwin's 1934:

"An information may be filed against any person

or corporation in the following cases:

"'(4) When any corporation does or omits acts which amount to a surrender or forfeiture of its rights and privileges as a corporation.'"

It is further provided by statute relative to mutual life, accident, and assessment insurance, section 8989, Burns 1926, section 39-426, Burns 1933, section 9785, Baldwin's 1934, that:

"Any incorporation, association or society organized to insure lives, which provides for the payment of policy claims, or the accumulation of reserve or emergency funds, and the expenses of the management and the prosecution of the business by payments to be made either at periods named in the contract or upon assessments as required; by persons holding similar contracts, and wherein the insured's liability to contribute to the payment of policy claims accrued or to accrue is not limited to a fixed sum, shall be deemed to be engaged in the business of life insurance upon the assessment plan, and shall be subject only to the provisions of this act; but nothing herein contained shall be construed as applicable to any association of religious or secret societies, or to any class of . . . soldiers, formed for the mutual benefit of the members thereof and their families, exclusively, or to any secret or fraternal societies, lodges or councils that may be organized, or that are now organized and doing business in this state, which conduct their business and secure members on the lodge system exclusively, having ritualistic work and ceremonies in their societies, lodges or councils and which are under the supervision of the grand or supreme body, nor to any association organized solely for benevolent purposes and not for profit."

The question presented, under the facts as stipulated, is whether the appellant is a corporation organized and operating not for profit, such as a club, lodge, social, or athletic society, as contemplated under the non-profit incorporating act as provided in section 5485, *supra,* or whether it is in practical effect a mutual life and

accident insurance company as provided in section 8989, *supra.*

It is seen from the policy or certificate of membership issued that at the inception a membership fee of five dollars and a registration fee of one dollar is required, and that in the event of the natural death of a member the beneficiary is entitled to an amount ranging from $500 to $250, depending on the age of the member. And it is further seen that there are disability benefits ranging from $250 to $1,000 allowed. The face of the policy or membership certificate is not unlike that of an insurance policy and any one who is not acquainted with insurance contracts would at least think he was buying an insurance policy. In addition to the membership fee of $5.00 and the registration fee of $1.00, article 5 provides that when a death or permanent disability shall occur to a member, a contribution of $1.00 shall be made, if the directors deem it necessary. In addition said article provides that there may be contributions required for expenses, not to exceed $4.00 during a calendar year. It is thus seen that when the society has a large membership a large amount of money will be controlled and handled by its officers.

It is a familiar rule of law that a corporation can do only what is expressly or impliedly authorized by its charter. A corporation being a mere creature of the law possesses only those properties which the charter confers upon it expressly, or as incidental to its existence. It can make no contracts and do no acts except such as are authorized by its charter. Those acts must be done by its officers and agents and in such manner as the charter or governing statutes authorize. 14 C. J. 50-51.

It is also well recognized that the business of insur-

ance is quasi-public in character, and the right to engage in it is a franchise, at least so far as corporations are concerned, and accordingly it is both competent and necessary for the state, under its police power, or as the creator of corporations, to determine who may engage in the business within its boundaries, and to prescribe terms and conditions on which the business may be conducted. 32 C. J. 981. And whether it is an insurance contract is determined, not merely from the language of a certificate of membership, but rather from its contents as a whole and the conduct of the parties as a practical interpretation of the contract. 32 C. J. 985.

The appellant was incorporated under section 5485, *supra,* which provides for the incorporation of societies, associations, and clubs not for profit. It provides, as heretofore set out, that any three or more persons, citizens of the United States, who desire to associate themselves for any lawful purpose other than for pecuniary profit may do certain things. While section 8989, *supra,* provides that:

"Any incorporation, association or society organized to insure lives, which provides for the payment of policy claims, or the accumulation of reserve or emergency funds, and the expenses of the management and prosecution of the business by payments to be made either at periods named in the contract or upon assessments as required by persons holding similar contracts, and wherein the insured's liability to contribute to the payment of policy claims accrued or to accrue is not limited to a fixed sum, shall be deemed to be engaged in the business of insurance upon the assessment plan and shall be subject only to the provisions of this act; but nothing herein contained shall be construed as applicable to any association or religious or secret societies,

or to any class of mechanics, express, telegraph or railroad employees, or ex-union soldiers, formed for mutual benefits of the members thereof and their families exclusively, or to any secret or fraternal societies, lodges or councils that may be organized and doing business in this state, which conduct their business and secure members on the lodge system exclusively, having ritualistic work and ceremonies in their societies, lodges or councils, and which are under the supervision of the grand or supreme body, nor to any association organized solely for benevolent purposes and not for profit."

By the stipulation of facts the appellant does not come within any of the exceptions of the foregoing section of the statute, unless within the last—"nor to any ■ .association organized solely for benevolent purpose and not for profit," and we do not think it comes within this exception for reasons hereafter stated.

The policy or certificate of membership of appellant provides for the payment of claims and an emergency fund. It provides for the expenses of the management and prosecution of the business at periods fixed by the directors; the insured's liability to contribute to the payment of claims is not limited to a fixed sum, and, when these facts exist, the incorporation, association, or society engaged in such business is declared by statute to be in the insurance business.

It cannot be said that the appellant is organized solely for benevolent purposes and not for profit. It may be said that all insurance companies are, in a sense, organized for benevolent purposes, but not in the sense as used in the statute. The word "benevolent," as defined in the dictionary, means "Having a disposition to do good; possessing or manifesting good will toward mankind and a desire to promote men's prosperity and hap-

piness." With this idea in mind all insurance companies are benevolent, for they all insist that an insurance policy promotes one's prosperity and happiness. It cannot be said that the instant corporation was organized purely and solely for a benevolent purpose, and the stipulated facts do not so show. It was probably organized to a very large extent for the benefit of those organizing it. and who hoped to become, and probably did, the officers and directors. Under the stipulated facts the appellant is not a benevolent organization in the sense of dispensing benefits without consideration. A membership fee of five dollars, a registration fee of one dollar, and other amounts, more or less, according to the membership, are to be paid, and this, in effect, amounts to an assessment company.

In the case of *State of Indiana* v. *Willett* (1908), 171 Ind. 296, 86 N. E. 68, the facts are similar to those in the instant case. The Greenfield Mutual Burial Association provided a plan for the payment of funeral expenses for the members. It provided for the payment, by assessment, of funeral expenses to the amount of $75.00 for each member ten years of age or over, and $37.50 for each member under ten years of age. Whenever a member of over ten years of age died, every member over ten years old was to pay eleven cents, ten cents to be used as funeral expenses and one cent to be used for paying for collections; all members under ten years of age and over five years of age were to pay five cents, all of which was to go for funeral expenses. When a member under ten years of age died, each member over ten years of age was to pay six cents, five cents of which was to be used to pay funeral expenses and one cent for collections; members under ten years of age were to pay three cents each, all of which was to be used for funeral expenses. Failure to pay any

such assessment for thirty days forfeited the membership and all previous payments. If there should be an excess of revenue from the assessments, such excess should be paid into the treasury to be applied on future benefits, as the necessity might arise.

In discussing the foregoing case, the court said (p. 303):

"The contract was issued by an association whose declared object was to secure, or make certain, by a system of mutual contribution, to each member of the association, at death, the specific benefit of $75 for application to his burial service. This was indemnity, or security, that, at the cessation of the life of the member, a certain sum of money would be payable by the association for his burial, whether the deceased had paid one assessment or a thousand. The controlling elements of the contract, as interpreted by the by-laws, are in all material respects . . . similar to those of an ordinary mutual life insurance company. Death assessments must be paid by the contract holder during the life of the insured, and the promised indemnity is payable in a lump sum, and in a definite amount. The association needs and employs agents to represent it. It solicits from the general public. It is founded on no principle of philanthropy, benevolence, or charity. . . . It is simply a business enterprise, in which the contract holder is promised a definite thing, in consideration of his performance of a definite undertaking on his part. The contract is determinable by the cessation of a human life, and belongs to that extended class of agreements dependent upon such contingency, and commonly known as life insurance."

In the instant case, the policy provides for payments to the designated beneficiary on the death of a member amounts ranging from $250 to $1,000, depending on age, and in addition certain disability benefits. The losses are paid from a mutual contributed fund; the society employs agents and solicits business from the Negro race. Death assessments must be paid by the contract

holder during the life of the insured, and the promised indemnity is payable in a lump sum, and in a definite amount. And, as said in the case of *State* v. *Millett, supra,* the appellant is simply a business enterprise, in which the contract holder is promised a definite thing, in consideration of his performance of a definite undertaking on his part. The contract is determinable by the cessation of human life, and belongs to that extended class of agreements dependent upon such contingency, and commonly known as life insurance.

In the case of *Bauer* v. *Samson Lodge, Knights of Pythias* (1885), 102 Ind. 262, 268, 1 N. E. 571, the court said:

> "A corporation which promises to pay a certain sum as benefits during a member's illness, in consideration of his payment of dues, is not a purely benevolent organization; it may be, and doubtless is, benevolent and charitable in a great degree, but it is not a benevolent organization in the sense of dispensing benefits without consideration."

The case of *State of Kansas ex rel.* v. *The Vigilant Insurance Company* (1883), 30 Kansas 585, was an action in *quo warranto* questioning the right of the defendant to carry on the business of insurance. It was agreed that the defendant had not complied with the insurance laws of the state. The purpose of the corporation was to afford mutual indemnity and protection in case of loss by accident, death, and theft of horses, said indemnity being secured by the collection and disbursements of assessments pro rata. The expense of doing business between the members was to be met by admission fees and semi-annual dues. The court, by Brewer, J., in discussing the case said (p. 587):

> "The corporation proposes to 'indemnify its members for loss of damage by accident, death and theft of animals belonging to members.' It says, in one of its circulars, that it does not sell insurance

and does not receive premiums for insurance; but nevertheless, its single, unmistakable business is that of contracting for indemnity for loss. Its method is this: Each member pays a membership fee and annual dues. This is for the purpose of keeping up the organization, and paying officers' salaries, etc. Then for losses, assessments are made upon the members, and only members can share in the benefit of the corporation. There is no accumulated fund out of which to pay losses, but reliance is wholly upon the assessments. But this is insurance. It is contracting for indemnity. It matters not how the funds for the payment of losses are secured. So long as the contract is such that in case of loss the promisee is entitled to claim compensation for the loss, it is a contract of indemnity."

In the case of *The State* v. *Brawner* (1883), 15 Mo. App. 597, the court said:

"A corporation organized 'to promote the well-being of the members and to furnish aid to their families in case of a member's death,' where no moral or social prerequisite is required for membership, but only conditions of age and health, and which provides no benefit except in the case of death, and collects funds for this purpose by assessments in case of death, is a mutual insurance company, and subject to the insurance laws of the State."

The case of *Commonwealth* v. *George R. Wetherbee* (1870), 105 Mass. 149, 160, in an opinion by Gray, J., is very applicable to the instant case. The court said:

"A contract of insurance is an agreement, by which one party, for a consideration (which is usually paid in money, either in one sum, or at different times during the continuance of the risk), promises to make a certain payment of money upon the destruction or injury of something in which the other party has an interest. In fire insurance and marine insurance, the thing insured is property; in life or accident insurance, it is the life or health of a person. In either case, neither the times and amounts of payments by the assured, nor

the modes of estimating or securing the payment of the sum to be paid by the insurer, affect the question whether the agreement between them is a contract of insurance. All that is requisite to constitute such a contract is the payment of the consideration by the one, and the promise of the other to pay the amount of the insurance upon the happening of injury to the subject by a contingency contemplated in the contract.

"The contract made between the Connecticut Mutual Benefit Company and each of its members, by the certificates of membership issued according to its charter, does not differ in any essential particular of form or substance from an ordinary policy of mutual life insurance. The subject insured is the life of the member. The risk insured is death from any cause not excepted in the terms of the contract. The assured pays a sum fixed by the directors and not exceeding ten dollars, at the inception of the contract, and assessments of two dollars each annually, and of one dollar each upon the death of any member of the division to which he belongs, during the continuance of the risk. In case of the death of the assured by a peril insured against, the company absolutely promises to pay to his representatives, in sixty days after receiving satisfactory notice and proof of his death, 'as many dollars as there are members in' the same division, the number of which is limited to five thousand. The payment of this sum is subject to no contingency but the insolvency of the corporation. The means of paying it are derived from the assessments collected upon his death from other members; from the money received upon issuing other certificates of membership, which the by-laws declare may, after payment of expenses, be 'used to cover losses caused by the delinquencies of members'; and from the guaranty fund of one hundred thousand dollars, established by the corporation under its charter.

"This is not the less a contract of mutual insurance upon the life of the assured, because the amount to be paid by the corporation is not a gross sum, but a sum graduated by the number of members holding similar contracts; nor because a portion of

the premiums is to be paid upon the uncertain periods of the deaths of such members; nor because, in case of non-payment of assessments by any member, the contract provides no means of enforcing payment thereof, but merely declares the contract to be at an end, and all moneys previously paid by the assured, and all dividends and credits accrued to him, to be forfeited to the company.

"The fact, offered to be proved by the defendant, that the object of the organization was benevolent and not speculative, has no bearing upon the nature and effect of the business conducted and the contracts made by the corporation.

"The ruling that this association was an insurance company, within the meaning of the statute upon which the defendant was indicted, was therefore correct, . . ."

The appellant was incorporated under the name of the National Colored Aid Society, but the name is not controlling, and it does not fix or establish its real legal character. If in fact and purpose it is a corporation for insurance purposes, then it must abide the regulatory powers of the state relating to the insurance laws of the state. Neither does the clause in section 1 of article 7 of the by-laws which provides that "all payments made by any member now or hereafter are voluntary gifts or donations for the purpose of aiding members of the society and to take care of expenses of the said society" save it from being an insurance company. The stipulation of facts shows that the payments were not gifts or donations, but on the contrary fees or premiums to become a member. The payments were no more voluntary than any other premiums for life insurance. They are all voluntary in the sense that no one is compelled to take out life insurance.

Under section 8989, Burns Ann. St. 1926, relative to mutual, accident and assessment plan insurance, certain exceptions are made, but the appellant does not come

within any of the exceptions therein mentioned, and it is so stipulated. It is also stipulated that it has not complied with the state regulations governing insurance companies.

We are of the opinion that the appellant is engaged in life and accident insurance, and that the judgment of the lower court in permanently enjoining it from selling its contracts and forfeiting its franchise was correct.

Judgment affirmed.